55 So.2d 894

**BELL v. HURLOCK & LUNO et al.**

No. 39924.

Dec. 10, 1951.

J. B. Nachman, Alexandria, for defendants-appellants.

Stafford & Pitts, Alexandria, for plaintiff-appellee.

HAMITER, Justice.

James R. Bell instituted this suit to recover from the copartnership of Hurlock and Luno, and the individual members thereof, the sum of $2900.57, allegedly the balance of a commission due him for selling, during the latter part of 1947 and in January, 1948, surplus buildings at Camp Claiborne which the defendants purchased from the United States Government. Later he reduced the demand to $2156.02.

Defendants admitted plaintiff's employment as a commission salesman at an agreed compensation of one-third of the net profits resulting from the sales of such buildings. They denied owing the alleged balance, however, and averred that he had been overpaid.

During the trial the dispute between the parties principally concerned numerous items of expense which the defendants claim are chargeable against the gross profits.

Following submission of the case the district court awarded plaintiff a judgment for $1569.06. However, it did not specify

in what manner this amount was determined—that is, it failed to show just which items of expense asserted by defendant were allowed or disallowed.

Defendants appealed from the judgment. Plaintiff neither appealed nor filed answer to defendants' appeal.

From our thorough study of the record we are not convinced that the award made to plaintiff is excessive.

The gross profits from the sales of the Camp Claiborne surplus buildings, we find, amounted to $71,986, a figure contended for by defendants and $400 less than the one suggested by plaintiff. Against this amount it seems proper to allow expenditures of defendants totaling · $47,241.09, many of which are admitted by plaintiff and others are supported by competent, though not particularly weighty, evidence.

But the additional expenses claimed on the Camp Claiborne venture (amounting in all to $4894.14) are not allowable, in our opinion, for the reason that they have not been proved by defendants with any degree of certainty. Included in this latter group is an item of $1008.46 for advertising. To support it defendants introduced some twelve cancelled checks, eleven of which were payable to various newspapers in Louisiana, Mississippi, Texas and Oklahoma and one to a printing shop. However, they were unable to point out the proportionate amounts thereof spent in connection with the Camp Claiborne build-

ings, the several other army camp undertakings in which they were then engaged, and the house wrecking and moving business, their principal endeavor. In fact, they introduced neither copies of the advertisements nor statements from the publishers to show that the expenses affected the sales in which plaintiff was interested.

The same can be said of the item of $2180 for hotel, travel and entertainment. Offered in proof of this were cancelled checks and drafts cashed at various hotels in New Orleans and elsewhere. However, as to the use of the proceeds thereof defendants could say only that they were spent in entertaining numerous persons with the view of furthering the purchase and sales of buildings at Camp Claiborne. They failed to disclose who those persons were, how they affected that project, or where the funds were expended. Besides there were other business engagements of defendants then in progress.

Again, proper proof was not made as to the item for telephone and telegraph expenses of $1081.68. Defendants, relying almost entirely on a "little black book" containing a series of jumbled figures, could not identify any one of the telephone calls or telegrams for which credit is sought.

A claimed expense of $346 for gasoline and oil purchased likewise was not proved. The partner Hurlock testified that such fuel was used in his automobile during

the latter part of 1947. But he did not show what part thereof, if any, was employed in connection with the Camp Claiborne project.

Unallowable also is a fee of $350 paid to an Alexandria auditor, J. L. Moak. Defendants say that this expense covered the auditing of the Camp Claiborne operations as a prerequisite to the filing of income tax returns. Plaintiff, on the other hand, insists that the work of the auditor for which such payment was made was principally a summarization of defendants' contentions in this suit, a position which the record seems to sustain. Defendants kept no books on the Camp Claiborne project. The purported audit, consisting of two typewritten sheets and for the most part listing the items relied on here by defendants, was not submitted to plaintiff until June, 1949, or some months after this suit was filed. No attempt was made by defendants to show that the data furnished were ever used as a basis for income tax returns. Further, the partner Hurlock testified: "I don't know what an audit is but I told Moak I wanted the details straightened out so I could understand them and that I could present them to my attorney and this is what Mr. Moak gave me."

The total proved expenditures on the Camp Claiborne project (admitted or supported by some competent evidence), therefore, appear to have been $47,241.09. The deducting of this amount from the gross sales of $71,986 discloses a net profit of $24,744.91. Of this the plaintiff was entitled to one-third, or $8248.30, as his commission. He admitted during the trial that he had received direct payments on his contract of $6505; and the record also discloses that he retained amounts of $135 and $40 belonging to defendants and for which they are entitled to credit. Consequently, there appears to be a balance due and owing to plaintiff of at least the sum of $1568.30.

Of course, the result of our computation is seventy-six cents less than the award ($1569.06) of the district judge. The reason for this difference is not known, for we were not favored with his figures. However, in view of the weak evidence which the defendants offered in support of many of the claimed allowances and also of their failure to keep adequate records of the Camp Claiborne venture we cannot say that the judge's conclusion is manifestly incorrect. It, hence, will not be disturbed.

For the reasons assigned the judgment appealed from is affirmed.